1  JOSEPH P. RUSSONIELLO (CABN 44332)
   United States Attorney
2
   BRIAN J. STRETCH (CABN 163973)
3  Chief, Criminal Division

4  WENDY THOMAS (NYBN 4315420)
   Special Assistant United States Attorney
5
   LINDSAY HOOPES
6  Law Clerk

7     450 Golden Gate Avenue, Box 36055
      San Francisco, California 94102
8     Telephone: (415) 436-6809
      Facsimile: (415) 436-7234
9     E-Mail: wendy.thomas@usdoj.gov

10 Attorneys for Plaintiff

11                    UNITED STATES DISTRICT COURT

12                   NORTHERN DISTRICT OF CALIFORNIA

13                        SAN FRANCISCO DIVISION

14 UNITED STATES OF AMERICA,        )   Case No. CR 08-0163 MAG
                                    )
15         Plaintiff,                )
                                    )
16     v.                            )   **DECLARATION OF LINDSAY**
                                    )   **HOOPES IN SUPPORT OF UNITED**
17 LISA K. EMMART,                   )   **STATES' MOTION FOR SUMMONS**
                                    )
18         Defendant.                )
                                    )
19

20 I, Lindsay B. Hoopes, hereby declare as follows:

21     1. I am a Law Clerk in the United States Attorney's Office assigned to the prosecution of

22 this case. I received the following information from Rangers employed by the National Park

23 Service and assigned to the Golden Gate National Recreational Area and the Presidio Trust.

24     2. On February 22, 2008, at approximately 7:00 p.m., National Park Service ("NPS")

25 Rangers Eric Yount ("Yount") and Ranger Shannon Jay ("Jay") were on duty in a marked patrol

26 vehicle at Lincoln Boulevard and Howard Road in the Presidio. Yount spotted a gray Jeep Sports

27 Utility Vehicle bearing California License Plate No. 5FEG749.  While traveling southbound, the

28 Jeep pulled off to the side of the road and the driver contacted the Rangers.

DECL. IN SUP. OF MOT. FOR SUMMONS
CR 08-0163 MAG

3. The driver indicated to the Rangers that she was looking for her missing father. Jay noted that the only occupant of the vehicle was a white female later identified by her California driver's license as Lisa K. Emmart ("Emmart").

4. Jay noticed that Emmart exhibited objective signs of intoxication, including slurred speech and bloodshot, watery eyes. Jay detected a strong odor of alcohol emanating from the vehicle.

5. Jay requested Emmart pull her car over to a safer location. When Jay directed Emmart to pull her car forward, Emmart actually drove it backwards, the wrong way, down the street. Emmart then corrected the car's direction, and moved to Jay's designated location.

6. Jay ordered Emmart out of her car. When Emmart exited the vehicle, Emmart was unsteady on her feet and walked in a slow gait around the vehicle. Emmart was so unsteady that Jay asked Emmart to sit in her vehicle while he asked her additional questions.

7. Jay asked Emmart if she had been drinking, and she indicated she consumed one beverage. Jay noticed the odor of alcohol emanating from Emmart's person..

8. Ranger Agnew ("Agnew") arrived on scene to help conduct Field Sobriety Tests ("FSTs"). Agnew and Yount attempted to initiate the tests, but Emmart was uncontrollably crying and hyperventilating. Emmart's speech became so slurred that the Rangers could not understand what Emmart was saying. Yount calmed Emmart down, and Jay proceeded to conduct FSTs.

9. Jay administered the following tests: <u>Horizontal Gaze Nystagmus</u> - Jay observed lack of smooth pursuit, with distinct and sustained nystagmus at maximum deviation, with an onset of nystagmus prior to 45 degrees in the left and right eyes; <u>Rhomberg Balance Test</u> – Emmart took one minute and 15 seconds to estimate the passage of 30 seconds; <u>Finger Count Test</u> – Emmart missed her ring finger; <u>One-Leg Stand</u> – Emmart put her foot down twice during the 30 second count and swayed while attempting to balance. Emmart swayed so far backwards that she had to take a couple steps to catch her balance. Jay conducted the test a second time on the sidewalk – a smooth even surface. Emmart put her foot down again, this time twice within first eight-count. Emmart similarly swayed while balancing. After Emmart put her foot down, Jay felt it necessary

1 to ask her to yield for her personal safety.

2    10. The Rangers concluded that Emmart's performance on the FSTs, in conjunction with the odor of alcohol emanating from her person and her objective signs of intoxication, led the Rangers to conclude she operated her vehicle under the influence of alcohol.

   11. The Rangers administered the Portable Breath Test ("PBT") which indicated that Emmart had a Blood Alcohol Concentration ("BAC") of .234, almost three times the legal limit.

   12. Yount placed Emmart under arrest for driving while under the influence of alcohol. The Rangers subsequently conducted a test using the Intoxilyzer 5000, which indicated that Emmart had a BAC of .243.

   13. Yount cited Emmart with two violations: 1) citation No. 0894314 for operating a vehicle while under the influence of alcohol with a BAC of .08 or higher, in violation of 36 C.F.R.§ 1004.23(a)(1); and 2) citation No. 0894279 for operating a motor vehicle under the influence of alcohol, in violation of 36 C.F.R.§ 1004.23(a)(2).

   14. I declare under penalty of perjury, according to the laws of the United States, that the foregoing is true and correct to the best of my knowledge and belief.

Respectfully submitted,

Dated: May 9, 2008                                    /s/
                                                     LINDSAY B. HOOPES
                                                     Law Clerk